UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
GRACE WEINBERG and JOAN WARD,       )
as personal representative for      )
the Estate of HARVEY MARRON         )
                                    )
         Plaintiffs,                )
                                    )
         v.                         )   CIVIL ACTION
                                    )   NO. 11-11676-WGY
GRAND CIRCLE TRAVEL, LCC d/b/a      )
OVERSEAS ADVENTURE TRAVEL,          )
TOURISM AND PUBLIC RELATIONS        )
SERVICES LIMITED trading as         )
SERENGETI BALLOON SAFARIS; and      )
SERENGETI BALLOON SAFARIS, LTD.     )
                                    )
         Defendants.                )
                                    )
```

MEMORANDUM AND ORDER

YOUNG, J.                                    September 19, 2012

This negligence action explores the limits of this Court's power to exercise in personam jurisdiction over a foreign defendant. It involves two Florida residents who planned an African safari vacation with a Massachusetts travel agent, only to become the victims of a tragic hot air balloon crash in the Serengeti. One victim was killed in the crash and the other, the deceased's fiancée, sustained severe bodily injuries, allegedly due to the negligence of the balloon company. The deceased's estate and the surviving victim now seek to hold the travel agent, balloon company, and its overseas booking agent liable in

Massachusetts.  Faced with two defendants' motion to dismiss for lack of personal jurisdiction, the plaintiffs bear the burden of proving the defendants' amenability to suit in this forum.  E.g., Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995); see J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2786-87 (2011) (plurality decision); S. Wilson Quick, Staying Afloat in the Stream of Commerce: Goodyear, McIntyre, and the Ship of Personal Jurisdiction, 37 N.C.J. Int'l L. & Com. Reg. 547 (2011); see also Richard B. Kock, Jr., A Non-Resident Defendant Is Only Subject to the Jurisdiction of a State Where That Defendant Displays Intentional, Forum-Directed Conduct and Purposefully Avails Him or Herself of the Benefits and Protections of That State's Laws: J. McIntyre Machinery, Ltd. v. Nicastro, 50 Duq. L. Rev. 199 (2012).

At the same time, the Court will address a motion to amend. Pls.' Mot. Leave File Second Am. Compl., ECF No. 33.

I.    INTRODUCTION

Florida residents Grace Weinberg ("Weinberg"), on her own behalf, and Joan Ward ("Ward"), as personal representative for the Estate of Harvey Marron ("Marron") brought action against a Massachusetts company, Grand Circle Travel, LLC d/b/a Overseas Adventure Travel ("Overseas Adventure"), a Tanzanian corporation, Tourism and Public Relations Services Limited trading as Serengeti Balloon Safaris ("Tourism Services"), and an English

2

company, Serengeti Balloon Safaris, LTD ("Serengeti Balloon"),

seeking compensatory and punitive damages on claims of strict

liability, negligence, gross negligence, and recklessness.

Compl. Jury Demand ("Compl."), ECF No. 1.

Weinberg and Ward claim that Overseas Adventure, Tourism

Services, and Serengeti Balloon are strictly liable under the

Convention for Unification of Certain Rules for International

Carriage by Air ("Montreal Convention")[1] for damages arising from

the death of Marron and the bodily injuries of Weinberg during a

hot air balloon ascension in Tanzania.  Id. at 6.  They also

claim that Overseas Adventure was negligent in failing to perform

an adequate investigation of safety issues concerning Tourism

Services.  Id. at 6-7.  Further, they claim that the Tourism

Services and Serengeti Balloon (collectively referred to as the

"Serengeti Defendants") were grossly negligent in causing the

death of Marron and bodily injuries of Weinberg.  The Serengeti

Defendants subsequently moved to dismiss for lack of personal

jurisdiction, claiming that this Court does not have personal

jurisdiction over them.

---

[1] The Convention for Unification of Certain Rules for
International Carriage by Air, Done at Montreal, May 28, 1999,
ICAO Doc. 9740, reprinted S. Treaty Doc. No. 106-45, 1999 WL
33292734 (2000) (entered into force Nov. 4, 2003), is commonly
known as the Montreal Convention.  Plaintiff erroneously referred
to the Montreal Convention as the Montreal Protocol.  Compl. ¶¶
6, 8.  For a clarification on the distinction, see Smith v.
American Airlines, Inc., No. 09-02903 WHA, 2009 WL 3072449, at *1
n.2, *3 n.4 (N.D. Cal. Sept. 22, 2009).

### A.    Procedural Posture

Weinberg and Ward filed this action on September 21, 2011.
See Compl.  On November 3, 2011, Overseas Adventure filed an
answer to Weinberg and Ward's complaint, denying the allegations.
Def. Grand Circle Travel LLC's Answer Pls.' Compl., ECF No. 4.
On November 16, 2011, Overseas Adventure filed a third-party
complaint against Kibo Guides (TZ), Ltd. ("Kibo").  Def. Third-
Party Pl. Grand Circle LLC's Third-Party Compl. Kibo Guides (TZ)
LTD., ECF No. 5.  Additionally, on November 16, 2011, Overseas
Adventure filed an amended answer to Weinberg and Ward's
complaint and cross-claims against the Serengeti Defendants.
Def. Grand Circle LLC's Am. Answer Pls.' Compl. Cross-cl. Defs.
Tourism Pub. Relations Servs. Ltd. Trading as Serengeti Balloon
Safaris & Serengeti Balloon Safaris Ltd., ECF. No. 6.

On January 30, 2012, the Serengeti Defendants moved to
dismiss the complaint for lack of personal jurisdiction.  Mot.
Defs. Tourism Public Relations Servs. Ltd, Trading Serengeti
Balloon Safaris Serengeti Balloon Safari, LTD, Dismiss Lack
Personal Jurisdiction, ECF No. 21; Mem. Defs. Tourism Pub.
Relations Servs. Ltd. Trading as Serengeti Balloon Safaris &
Serengeti Balloon Safaris Ltd. Supp. Mot. Dismiss Lack Personal
Jurisdiction. ("Defs.' Mem."), ECF No. 22.  On January 31, 2012,
Overseas Adventure stipulated and agreed that the third-party
action involving Kibo be dismissed.  Stipulation Dismissal

Without Prejudice Third-Party Claims Only, ECF. No. 25. Weinberg and Ward subsequently moved to amend their complaint to include additional facts allegedly linking the Serengeti Defendants, explaining how Marron and Weinberg booked their balloon excursion, and facts relevant to this Court's jurisdiction. Pls.' Mot. Leave Am. Compl. 2, ECF No. 31.

Before the Court ruled on either of the pending motions, Weinberg and Ward filed an additional motion to amend.  Pls.' Mot Leave File Second Am. Compl.  This second motion to amend incorporated the first proposed amended complaint as well as new claims against the Serengeti Defendants for violations of Massachusetts General Law chapter 93A and chapter 229.  Id. at 2. The second motion also proposed a new defendant, Kibo Guides (TZ), Ltd., the same party that had been impleaded by the third-party complaint and dismissed by stipulation.  Id.

### B.   Facts Alleged

In the fall of 2010, Marron and Weinberg purchased a trip to Tanzania from Overseas Adventure at its Massachusetts office. Second Am. Compl. ¶ 10.  As part of the package put together by Overseas Adventure, Weinberg and Marron purchased tickets for a hot air balloon excursion.  Id.  Overseas Adventure advertises the African balloon trips with Tourism Services as safe and tranquil, and does not provide a warning to the purchasers of the flights that wind could and had previously caused a crash and

serious injury.  Compl. ¶ 9.  After Weinberg and Marron requested the tickets, Overseas Adventure booked the tickets through an African tour operator, Kibo.  Defs.' Mem. 3.  Kibo subsequently requested a reservation for a balloon excursion with Tourism Services, which Tourism Services then confirmed by issuing a flight voucher to Kibo in Tanzania.  Id.

During the morning of September 29, 2010, it was windy at the launch site, yet Tourism Services did not seek to assess the velocity of potentially dangerous cross-winds.  Second Am. Compl. ¶ 20.  One of the two balloons operated by the Serengeti Defendants scheduled to fly that morning did not fly because of the windy conditions.  Id. ¶ 22.  The passengers on the balloon that is the subject of this case were not informed of the other cancellation, nor were they counseled as to the heightened risk of a flight under windy conditions.  Id. ¶ 23  Additionally, the balloon lacked basic safety equipment, such as passenger restraints for take-off and landing, launch site anemometers, a mechanism to rapidly deflate the balloon in the event of difficulties during flight, and it was flown by an inexperienced or "trainee" pilot.  Id. ¶¶ 24-25.  Nor did the balloon have an emergency locator beacon or GPS, a first aid kit for serious injuries, or sufficient drinking water in case of an emergency. Id. ¶ 24.

In their Second Amended Complaint, Weinberg and Ward allege

that Overseas Adventure exercises direct control over Kibo and
its personnel.  Second Am. Compl. ¶ 3.  Overseas Adventure hires
Kibo tour guides, provides them with "Overseas Adventure"
uniforms, trains, and supervises them.  Id.  Overseas Adventure
determines and provides the "Kibo" tour guides' pay, and has
authority to terminate them.  Id.  Apparently, the Kibo tour
guides also report to Overseas Adventure.  Id.  A contract
between the two companies provides that Overseas Adventure owns
the camping equipment used by Kibo personnel and supplies Kibo
drivers with Overseas Adventure uniforms.  Id.

As the balloon that carried Marron and Weinberg attempted to
descend, wind caused the basket of the balloon to crash into a
tree, killing Marron and a Danish passenger.  Second Am. Compl. ¶
26.  The balloon then dragged the basket across the ground,
hitting obstacles, and Weinberg's arm became trapped in the
rigging of the balloon.  Id. ¶ 27.  After the balloon landed,
Weinberg, along with deceased Marron, waited for hours in a
remote area for rescue.  Id. ¶ 28.  Weinberg sustained
lacerations to her face, arms and legs, and a broken wrist and
arm, which required skin grafts.  Id. ¶ 31.

## II.  ANALYSIS

### A.  Leave to Amend

Federal Rule of Civil Procedure 15(a) requires that consent
to file an amended pleading be "freely given when justice so

requires.'"  Adorno v. Crowley Towing & Trans. Co., 443 F.3d 122,
127 (1st Cir. 2006) (citing Fed. R. Civ. Pro. 15(a)).  This
liberal amendment policy applies unless the plaintiff exhibited
bad faith, undue delay, the amendment would work undue prejudice
on the opposing party, or be futile.  U.S. ex rel. Gagne v. City
of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citing Foman v.
Davis, 371 U.S. 178, 182 (1962)).

     Weinberg and Ward's motion to amend is not unduly delayed.
Compare Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527,
538 (1st Cir. 2011) (finding undue delay where plaintiff filed
the amendment nearly a year after a motion to dismiss, and after
court had dismissed the case) with ACA Fin. Guar. Corp. v.
Advest, Inc., 512 F.3d 46, 52, 57-58 (1st Cir. 2008) (finding
undue delay where plaintiff filed a second amended complaint only
after the court dismissed the claims, and almost a year after
oral argument on the motion to dismiss).  Here, the plaintiffs
filed the second motion to amend three months after oral argument
on the Serengeti Defendants' motion to dismiss, Pls.' Mot. Leave
File Second Am. Compl., eight months after the original
complaint, Compl., and before the Court entered judgment on the
Serengeti Defendants' motion to dismiss.  See Def. Grand Circle
LLC's Mem. Law Supp. Opp'n Pls.' Mot Leave File Second Am. Compl.
2, ECF No. 36.  The filing preceded the depositions of Weinberg
and Ward.  Id.

Nor are there allegations of bad faith or undue prejudice in the record. The Court, however, must examine each new count in the amended complaint for futility. See McNeill Eng'g Co., Inc. v. Trisport, Ltd., 59 F. Supp. 2d 199, 201 (D. Mass. 1999); accord Torres-Alamo v. Puerto Rico, 502 F.3d 20, 25-26 (1st Cir. 2007) (reversing and remanding denial of motion to amend where motion was filed only six months after the initial complaint). After resolving the issues of personal jurisdiction raised in the motion to dismiss, the Court will turn to the individual claims in the amended complaint. See Adorno, 443 F.3d at 126 (discussing the standard by which courts review motions to amend pleadings).

**B.    The Prima Facie Standard for Personal Jurisdiction**

The prima facie standard is the "most conventional" procedure to resolve a challenge to personal jurisdiction. Foster-Miller, Inc., 46 F.3d at 145. Under the prima facie standard the "plaintiff must go beyond the pleadings and make affirmative proof" to establish the existence of personal jurisdiction over the defendant. Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992) (citations omitted). The court thus reviews the evidentiary materials before it, including those submitted by the defendants. Val Leasing, Inc. v. Hutson, 674 F. Supp. 53, 55 (D. Mass. 1987).

1.    **The Court Lacks Personal Jurisdiction over the Serengeti Defendants**

The Serengeti Defendants moved to dismiss for lack of personal jurisdiction.  Defs.' Mem. 1.  The complaint pleaded that this Court's jurisdiction is proper under the Montreal Convention.  Compl. ¶ 8.

The Montreal Convention authorizes injured passengers to bring an action in five fora where subject matter jurisdiction exists:

(1)  in the territory of one of the States Parties, or
(2)  either before the court of the domicile of the carrier or its principal place of business, or
(3)  where the carrier has a place of business through which the contract has been made, or
(4)  before the court at the place of destination, or
(5)  in the territory of a State Party in which, at the time of the accident, the passenger has his or her principal and permanent residence, and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

Montreal Convention art. 33.  Where none of the places specified in Article 33 are in the United States, the court lacks treaty subject matter jurisdiction and must dismiss the case.  See In re West Caribbean Airways, S.A., 619 F. Supp. 2d 1299, 1316 (S.D. Fla. 2007) (Ungaro, J.) ("[T]reaty jurisdiction can be established only in one of the fora described in Article 33 . . . ."), aff'd, Pierre-Louis v. Newvac Corp., 584 F.3d 1052,

1056 (11th Cir. 2009) ("[U]nder Article 33 of the Convention, suits for damages by passengers on international flights can be filed in a limited number of fora."), <u>cert. denied</u>, 130 S. Ct. 3387 (2010).

Even if plaintiffs establish subject matter jurisdiction under the Montreal Convention, the court still has to address the issue of personal jurisdiction.[2] <u>Welch</u> v. <u>American Airlines, Inc.</u>, 970 F. Supp. 85, 88 (D.P.R. 1997) (Dominguez, J.) (holding that the Warsaw Convention confers jurisdiction at a national level and for purposes of venue "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced") (quoting 28 U.S.C § 1391(c))); <u>Luna</u> v. <u>Compania Panamena De Aviacion, S.A.</u>, 851 F. Supp. 826, 831 (S.D. Tex. 1994) (Rosenthal, J.) (citations omitted) ("This court's subject matter jurisdiction arises from the Warsaw Convention and possible diversity between the parties.  Under either basis, this court

---

[2] The Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C. § 40105 ("Warsaw Convention") was the predecessor treaty to the Montreal Convention.  As the Serengeti Defendants noted, the jurisdictional provisions of the Warsaw Convention, Article 28, and Montreal Convention, Article 33, are similar, except that the Montreal Convention adds a fifth jurisdiction in Article 33(2). The courts have held that the "case law interpreting provisions of the Warsaw Convention applies to cases interpreting 'substantively similar' provisions of the Montreal Convention." <u>Goodwin</u> v. <u>British Airways PLC</u>, No. 09-10463-MBB, 2011 WL 3475420, at *3 (D. Mass. Aug. 8, 2011) (Bowler, J.).

looks to the [state] long-arm statute to determine personal
jurisdiction.").

    As explained below, the facts of this case do not support
the application of the Montreal Convention.  Pflug v. Egyptair
Corp., 961 F.2d 26, 28 (2nd Cir. 1992).  The Montreal and Warsaw
Conventions, however, "do[] not apply to all claims of injuries
suffered in conjunction with international air travel."  Id. at
28-29 (citing Air France v. Saks, 470 U.S. 392 (1985)).
Therefore, an examination of diversity jurisdiction may still be
proper for those claims that are independent of the liability
provisions of the Montreal Convention.

    On the face of the complaint, however, Weinberg and Ward
failed to plea the diversity jurisdiction of this Court.[3]  The
absence of a short and plain statement upon which federal
diversity jurisdiction depends is not fatal and this Court may
allow amendment of the complaint to correct the jurisdictional
defect.  Odishelidze v. Aetna Life & Cas Co., 853 F.2d 21, 24
(1st Cir. 1988).  In this case, however, allowing amendment of
the complaint for these reasons would be futile because even if

---

    [3] Weinberg and Ward mentioned that this is a diversity
action in its response to the Serengeti Defendants' motion to
dismiss.  Pls.' Resp. Mot. Defs. Tourism Pub. Relations Servs.
Ltd. Trading Serengeti Balloon Safaris & Serengeti Balloon Safari
Ltd. Dismiss Lack Pers. Jurisdiction ("Pls.' Mem.") 14-15 n.6,
ECF No. 29 (arguing that "from the face of the Complaint, it is
certain that diversity jurisdiction exists and that the amount in
controversy far exceeds the required amount of $75,000").

Weinberg and Ward adequately plead the diversity jurisdiction of the Court, this Court concludes that it does not have personal jurisdiction over the Serengeti Defendants.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Sawtelle v. Farell, 70 F.3d 1381, 1387 (1st Cir. 1995) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  Due process requires this Court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted); cf. McIntyre, 131 S. Ct. at 2787 (plurality decision).

"A district court may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." Massachusetts Sch. of Law at Andover v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit. United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  This is not such a case and

13

no party suggests that it is.[4]  "In the absence of general
jurisdiction, a court's power depends upon the existence of
specific jurisdiction." <u>Massachusetts Sch. of Law at Andover</u>,
142 F.3d at 34.

> **a.   The Facts of This Case Do Not Support the
> Application of the Montreal Convention**

Weinberg and Ward allege that jurisdiction and venue are
proper in this Court under the Montreal Convention.  Compl. ¶ 8.
Both the United States and Tanzania are parties to the Montreal
Convention, which applies to "all international carriage of
persons, baggage or cargo performed by aircraft for reward."
Montreal Convention art. 1(1).  According to the Montreal
Convention, "[c]arriage between two points within the territory
of a single State Party without an agreed stopping place within
the territory of another State is not international carriage for
the purposes of this Convention." <u>Id.</u> art. 1(2).  Accordingly,
a hot air balloon tour within the country of Tanzania that was
accidently swept by wind did not include an "agreed stopping
place within the territory of another State" and is therefore not
covered by the Montreal Convention.  <u>See</u> <u>Gustafson</u> v. <u>American
Airlines, Inc.</u>, 658 F. Supp. 2d 276, 284 (D. Mass. 2009) (Bowler,
J.) (holding that a round trip booked in two connecting airlines

---

[4] Weinberg and Ward do not argue that the Serengeti
Defendants have sufficient direct contacts with Massachusetts to
warrant this Court's exercise of general jurisdiction over them.

between Boston and Puerto Vallarta, Mexico with a connecting
flight in Los Angeles was an "international carriage" under the
Montreal Convention because the two airlines agreed to share the
same code number, booked the flights at the same time, and the
bag was checked to Puerto Vallarta; as opposed to when "passenger
only has a ticket for domestic travel within the United States
without a connecting flight or continued journey to another
country, [where] the Warsaw Convention does not apply") (citing
Georgakis v. Eastern Air Lines, Inc., 512 F. Supp. 330, 332
(E.D.N.Y. 1981) (paraphrasing earlier decision that where a
ticket "authorized purely domestic transportation between Baton
Rouge, New Orleans and New York," it was not "'international
travel'"); Haldimann v. Delta Airlines, Inc., 168 F.3d 1324, 1326
(D.C. Cir. 1999) (holding that the plaintiff's purchase of
Swissair flight into Washington and Delta domestic flight in
single transaction with same Swiss travel agency was governed by
Warsaw Convention as international travel notwithstanding one
week interval between flights)).

> **b.  Weinberg and Ward's Factual Assertions
> Concerning this Court's Exercise of Personal
> Jurisdiction**

Weinberg and Ward assert two arguments in support of this
Court's jurisdiction over the Serengeti Defendants.  Pls.' Mem.
4-14.  First, they argue Kibo is an employee of Overseas
Adventure under Massachusetts General Laws, chapter 149, section

148B[5] and therefore all business the Serengeti Defendants did with Kibo was actually done with Overseas Adventure.  Id. at 5. Second, they argue that Overseas Adventure acted as the Serengeti Defendants' agent when it included the balloon flights as part of Overseas Adventure's safari package.  Id. at 10.

### (1)  The Employment Argument

Upon review of Massachusetts General Laws, chapter 149, section 148B, it is clear that the law applies only to individuals who have been misclassified as independent contractors - not companies.[6]  The Massachusetts Supreme Judicial

---

[5] Weinberg and Ward erroneously cite Massachusetts General Laws, chapter 151A, section 2 to determine the independent contractor status of Kibo.  See Pls.' Mem. 4.  This statute, while almost identical to Massachusetts General Laws, chapter 149, section 148B, is used by the Division of Unemployment Assistance.  See Mass. Gen. Laws ch. 151A, § 2; College News Serv. v. Department of Indus. Accidents, No. 04-4559-A, 2006 WL 2830971, at *4 (Mass. Sup. Ct. Sept. 14, 2006) (Sikora, J.).  The question of Kibo's employment by Overseas Adventure must be analyzed under Massachusetts General Laws, chapter 149, section 148B.

[6] The definition sections of Chapters 149 and 151 do not define the word "individual."  See Mass. Gen. Laws ch. 149, § 1; Mass. Gen. Laws. ch. 151A, § 1.  In a 2008 Advisory Opinion, however, the Massachusetts Attorney General used a hypothetical to explain the application of the law:

> For example, if painting company X cannot finish a painting job and hires painting company Y as a subcontractor to finish the painting job, provided that all of the individuals performing the painting are employees of company Y, then the Law does not apply. However, if painting company X hires individuals as independent contractors to finish the painting job, then this would be a violation of prong two and a misclassification under the Law.

Court has recognized that the law "establishes a standard to determine whether an <u>individual</u> performing services for another shall be deemed an employee or an independent contractor <u>for purposes of our wage statutes</u>." <u>Somers</u> v. <u>Converged Access, Inc.</u>, 454 Mass. 582, 589 (2009) (emphasis added).  Absent any authority holding that companies constitute "individuals" for purposes of Massachusetts General Laws, chapter 149, section 148B, this Court will not apply the law to this situation.

### (2)   The Agency Argument to Support Attribution of  Jurisdictional Contacts

"For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." <u>Daynard</u> v. <u>Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 55 (1st Cir. 2002).  The First Circuit has recognized the use of agency theory to attribute a party's in-state contacts to a foreign defendant for purposes of exercising jurisdiction. <u>See</u> <u>id.</u> at 56-57.  Although the Supreme Court has elaborated extensively on circumstances that warrant the exercise of specific jurisdiction, <u>see</u> <u>Goodyear Dunlop Tires Operations, S.A.</u> v. <u>Brown</u>, 131 S. Ct. 2846, 2854 (2011) (outlining <u>International Shoe</u> progeny), the recent applications of agency theory in the jurisdictional context have been limited to general jurisdiction. <u>See</u> <u>McIntyre</u>,

---

Attorney General's Fair Labor Division on Mass. Gen. Laws ch. 149, § 148B, Op. Att'y Gen. Mass. 5 (2008) (emphasis added) (noting "[t]he Law is focused on the misclassification of individuals").

131 S. Ct. at 2790 (examining whether New Jersey could exercise general jurisdiction over English company in products-liability suit); Goodyear Dunlop Tires Operations, 131 S. Ct. at 2857 (examining whether North Carolina could exercise general jurisdiction over foreign subsidiary of American parent).

The essential question here is whether the relationship between Overseas Adventure and the Serengeti Defendants, however it is labeled, is sufficient to attribute Overseas Adventure's in-state contacts with the Serengeti Defendants to exercise jurisdiction that comports with due process.  See Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7-8 (1st Cir. 2002) ("The exact type of agency relationship used to impute contacts is not crucial to our inquiry regarding traditional notions of fair play and substantial justice, nor are the technical differences between the states' different rules of agency vital."); Daynard, 290 F.3d at 53 (noting general agency relationship important, rather than indicating exact type).  In answering this question, the Court must determine: (1) whether the Serengeti Defendants were in an actual or apparent agency relationship with Overseas Adventure and (2) whether the Serengeti Defendants ratified Overseas Adventure's conduct.  See Daynard, 290 F.3d at 53-54 (outlining issues to be analyzed by the court); Meyersiek v. Richard, No. 06-335 T, 2008 WL 3306647, at *11 (D.R.I. May 30, 2008) (Martin, M.J.) (following analytical approach used in

18

<u>Daynard</u>).  Moreover, the <u>Daynard</u> court also emphasized that even if the defendant's relationship falls slightly outside of the confines of a partnership, joint venture, or other agency relationship, the court may find that a sufficient relationship exists under the Due Process Clause to permit the exercise of jurisdiction.  <u>See</u> <u>Daynard</u>, 290 F.3d at 56-57.

Weinberg and Ward rely on <u>Daynard</u> to support their argument that this Court has specific jurisdiction over the Serengeti Defendants.  Pls.' Mem. 15.  In <u>Daynard</u>, a Massachusetts professor filed suit against two law firms from two different states over a dispute concerning his fee in previous tobacco litigation.  <u>Daynard</u>, 290 F.3d at 48.  The South Carolina firm ("Motley") conceded jurisdiction in Massachusetts and the Mississippi firm ("Scruggs") objected to jurisdiction.  <u>Id.</u>  The First Circuit held that Scruggs was subject to jurisdiction in Massachusetts because the plaintiff reasonably understood a Motley partner "to be acting on behalf of a joint venture or other agency relationship between [Motley and Scruggs] . . . and that Daynard relied on this understanding by providing his services to both defendants."  <u>Id.</u> at 59.  The court further noted that Scruggs subsequently ratified Motley's conduct by knowingly accepting the benefits of Motley's retention of the plaintiff during the litigation.  <u>Id.</u> at 60.

The facts that the <u>Daynard</u> court relied upon to find a joint

venture or apparent agency relationship were as follows:  the
plaintiff worked with both firms by providing them advice,
including advice to Scruggs while physically present in
Massachusetts, as well as assistance provided from Massachusetts
by phone and fax; the firms agreed to pay the plaintiff a share
of the fees obtained from both firms; a Motley partner stated
that the plaintiff was part of the "team"; and a Motley partner
sent a letter to the Attorney General that stated both firms were
to "work jointly on all of the state cases." Id. at 58.

     Here, Weinberg and Ward rely on three factual assertions to
support their agency argument. See Pls.' Mem. 12-14.  First,
they assert that the Overseas Adventure Handbook expressly states
that Overseas Adventure is the Serengeti Defendants' agent. Id.
at 12.  Second, the Serengeti Defendants are identified in the
Handbook as the supplier of the balloon flight. Id.  Third,
Weinberg and Marron reasonably believed that Overseas Adventure
had full authority to book and confirm the balloon flight. Id.
at 13-14.

     With respect to the first assertion, Weinberg and Ward
highlight that the Overseas Adventure Handbook states "[t]o the
extent that [Overseas Adventure] is involved in booking air
transportation for you, [Overseas Adventure] acts as an agent of
the air carrier and not as your agent.  For all other purposes,
[Overseas Adventure] does not act as an agent for any party

whatsoever."  Pls.' Mem. 12; Pls.' Mem., Ex. 2, Traveler's
Handbook ("Traveler's Handbook") 34, Overseas Adventure Travel
General Terms Conditions ¶ 35, ECF. No. 29-4.  Weinberg and Ward
argue that, under the terms of the Travelers Handbook, Overseas
Adventure is the agent of all "air carriers," rather than the
term "airlines" used elsewhere, thus a hot air balloon flight
constitutes "air transportation" and Overseas Adventure was
acting as the Serengeti defendant's agent for the purposes of the
Traveler's Handbook.  Pls.' Mem. 12.  This argument fails,
however, because it is a misinterpretation of the Traveler's
Handbook, as it differentiates between "air transportation" and
"sightseeing excursions."  <u>Compare</u> Traveler's Handbook 33 ("Air
Arrangements"), <u>and</u> <u>id.</u> at 49-52 ("Airline Information"), <u>with</u>
<u>id.</u> at 48 (referring to the balloon trip as "balloon excursion").

Although the purpose of an apparent agency analysis is to
focus on conduct that "'leads a third party to believe that the
agent has authority and thus creates apparent authority to those
persons who act upon it,'" <u>Daynard</u>, 290 F.3d at 56 (citing H.G.
Reuschlein & W.A. Gregory, <u>The Law of Agency and Partnership</u>, §
25, at 65-66 (2d ed. 1990)), the present facts are not congruent
with the circumstances in <u>Daynard</u> because there the plaintiff
claimed to work personally with Scruggs and was told he was part
of the "team" of firms.  Here, however, no overt conduct by the

Serengeti Defendants is alleged comparable to that present in
Daynard.

Weinberg and Ward's last two factual assertions are that
Overseas Adventure purported to be the Serengeti Defendants'
agent by providing information about the balloon flight on one
page of the Handbook and that Weinberg and Marron reasonably
believed Overseas Adventure to have full authority to book the
tickets.  Pls.' Mem. 12-13.  According to the Handbook, Weinberg
and Marron could book the balloon flight on-site or with Overseas
Adventure forty-five days before departure.  See Traveler's
Handbook 48.  Weinberg and Marron did purchase their tickets in
advance with Overseas Adventure and did not pay any additional
costs once they arrived in Tanzania.  Pls.' Mem. 13.  By seeking
to sell tickets for the balloon flight on behalf of the Serengeti
Defendants, it is arguable that Weinberg and Marron reasonably
believed Overseas Adventure to be acting on behalf of Serengeti
Defendants and relied on this relationship when they purchased
the tickets.  This apparent authority to sell such tickets on
behalf of the Serengeti Defendants, however, does not amount to
the extensive evidence alleged by the plaintiff in Daynard.
Unlike Daynard, Weinberg and Marron did not make direct contact
with the Serengeti Defendants, nor were Weinberg and Marron ever
directly told that Overseas Adventure was working jointly with
the Serengeti Defendants.

Weinberg and Ward also argue that by allowing them to board the balloon without additional payment, it is evident that Overseas Adventure had the authority to sell the balloon flights on behalf of the Serengeti Defendants. Pls.' Mem. 14. A person ratifies an act by conduct when the conduct justifies a reasonable assumption that the person so consents. Restatement (Third) of Agency, § 4.01 (2006). "The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal." Id. § 4.01, cmt. b. Furthermore, "[u]nder Massachusetts law, ratification of agent's acts may be express or implied and, as a general proposition, the principal must have full knowledge of all material facts." Inn Foods, Inc. v. Equitable Coop. Bank, 45 F.3d 594, 597 (1st Cir. 1995). "Massachusetts courts, however, do not always require that the principal have actual knowledge" of all material facts. Id. A court can find ratification where a party "purposely shut[s] his eyes to means of information within his own possession and control." Id. (citing Torpey v. Interstate Equip. Leasing Corp., 760 F.2d 364, 365 (1st Cir. 1985)) (internal quotation marks omitted).

It is arguable that by relying heavily on local and international booking agents, Pls.' Mem., Ex. 6, Affidavit of Nigel Pogmore ("Aff. Nigel Pogmore") ¶ 6, ECF. No. 29-6, the Serengeti Defendants manifested assent to the agents' conduct on

its behalf.  By accepting the tickets that agents sell on its behalf without charging additional fees – even if it does not know what agent sells them - the Serengeti Defendants may be impliedly ratifying such conduct.  See Inn Foods, Inc., 45 F.3d at 597 n.7 (emphasizing that "benefits received are certainly strong evidence that the principal acquiesced in the agent's transaction").

As the Court should "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted," Daynard, 290 F.3d at 51, the Court recognizes that the Serengeti Defendants claim that Tourism Services communicated only with Kibo in Tanzania and that Overseas Adventure booked the excursion through Kibo.  Defs.' Mem. 8.  This chain of events could lead to the conclusion that the Serengeti defendants ratified Kibo's act of selling its tickets, but did not ratify Overseas Adventure's actions.  Conversely, Weinberg and Ward allege that the Serengeti Defendants rely heavily on booking agents and approximately ninety-nine percent of its passengers come from overseas bookings.  See Aff. Nigel Pogmore ¶ 5.  Therefore, it could be reasonable to assume that the Serengeti Defendants had reason to know that Kibo was working with foreign booking agents to secure ticket purchases; however, there is simply no evidence to suggest that the Serengeti Defendants knowingly accepted the benefits of a transaction initiated in Massachusetts.  See Daynard, 290 F.3d

at 60.  Although the question is a close one, ratification of the booking agents' conduct may have existed from the facts alleged.

Even so, in light of the restrictive approach to personal jurisdiction posited by the plurality opinion in McIntyre, 131 S. Ct. 2786-90,[7] when comparing the facts of this case to those in Daynard, this Court cannot conclude that the Serengeti Defendants were in an actual or apparent agency relationship with Overseas Adventure.[8]  Although the First Circuit has recognized that a

_____

[7] But see Arthur R. Miller, Inaugural University Professorship Lecture: Are They Closing the Courthouse Doors? (March 19, 2012) (www.law.nyu.edu/news/ECM_PRO_072088), excoriating the plurality decision:

> The McIntyre plurality demanded that the defendant not only have contacts with the forum, but have targeted the forum, and intended to submit to jurisdiction in that forum.  That constrained view, if it ultimately prevails, means that a corporate defendant – perhaps domestic as well as foreign – can structure its distribution system and have its products or services initially reach only one state while avoiding the jurisdiction in almost any other state to which they are then shipped by the distributor.  Thus, in many circumstances injured customers and employees may not be able to sue where they purchase or receive defective products or services, or live, or were injured; rather, plaintiffs may now have to litigate in distant fora – or abandon their claims altogether.

Id. at 12-13.

[8] See also Meyersiek, 2008 WL 3306647, at *1-6, *11 (relying on Daynard to find joint venture or agency relationship to attribute jurisdiction).  In Meyersiek, a Rhode Island plaintiff sued a business executive with contacts in Rhode Island ("Richard") and an Illinois private equity firm ("Frontenac") for breach of contract, intentional misrepresentation, and unjust enrichment.  Id. at *1.  The District of Rhode Island held that it had jurisdiction over Frontenac because Richard's in-state

relationship can fall slightly outside of the confines of a

partnership, joint venture, or other agency relationship, the

Serengeti Defendants' contacts with Massachusetts must still

conform to due process to permit the exercise of personal

jurisdiction.  See Daynard, 290 F.3d at 56-57.

### c.   The Massachusetts Long-Arm Statute

To establish personal jurisdiction in Massachusetts, a

plaintiff must show that the Massachusetts long-arm statute[9]

---

contacts attributed to Frontenac due to their apparent agency
relationship and ratification of Richard's conduct.  Id. at *13-
14.  The court relied on the following facts to reach its
conclusion:  Frontenac's website identified Richard as one of the
company's partners; Frontenac referred the plaintiff to Richard;
a targeted letter to the plaintiff stated Richard was partnered
with Frontenac; Frontenac was aware that the plaintiff was
seeking the help of Richard; Frontenac continued to identify
Richard as a partner on its website during the time Richard was
helping the plaintiff; and a letter from Frontenac repeatedly
used "we" to describe an investment that Frontenac and Richard
were proposing to make.  Id. at *11-15.  Here, Weinberg and
Ward's case lacks similar extensive interactions between the
Serengti defendants and Overseas Adventure to warrant
jurisdictional attribution.

[9] Massachusetts General Laws, chapter 223A, section 3 states
in its relevant part:

A court may exercise personal jurisdiction over a person,
who acts directly or by an agent, as to a cause of action
in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this
commonwealth;

(c) causing tortious injury by an act or omission in this
commonwealth;

(d) causing tortious injury in this commonwealth by an

grants jurisdiction and, if it does, that the exercise of jurisdiction under the statute is within the outer limits defined by the Due Process Clause of the United States Constitution. Foster-Miller Inc., 46 F.3d at 144.

The Court may sidestep the statutory inquiry and apply the constitutional analysis for determining specific jurisdiction because the Massachusetts Supreme Judicial Court has construed the Massachusetts long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Daynard, 290 F.3d at 52 (citing "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 442 (1972) (Reardon, J.)). The constitutional test has three prongs, namely: relatedness, purposeful availment, and reasonableness. Hannon v. Beard, 524 F.3d 275, 282 (1st Cir. 2008).

Specific personal jurisdiction exists when "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Massachusetts Sch. Of Law at Andover, 142 F.3d at 34 (citing Donatelli v. National Hockey League, 893 F.2d 459, 462 (1st Cir. 1990)). Thus, even if this

---

act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth[.]

Court were to hold that an apparent agency relationship and ratification existed between Overseas Adventure and the Serengeti Defendants, Weinberg and Ward must still pass constitutional muster under the Due Process Clause sufficient to exercise specific personal jurisdiction.

### (1)   Relatedness

The claim underlying the litigation must arise directly out of, or relate to, the defendant's forum-state activities. Foster-Miller, Inc., 46 F.3d at 144.  To demonstrate "relatedness," a plaintiff must show "a demonstrable nexus between plaintiff's claims and defendant's forum-based activities, such . . . [that] the litigation itself is founded directly on those activities." Hannon, 524 F.3d at 280 (quoting Massachusetts Sch. of Law at Andover, 142 F.3d at 34).  "[T]he relatedness test is a 'flexible, relaxed standard,'" Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (citation omitted), and the analysis focuses on the relationship between the defendant and the forum, Hannon, 524 F.3d at 283 (citing Sawtelle, 70 F.3d at 1389).

The hallmark of the relatedness analysis is the element of causation, Ticketmaster-New York, Inc., 26 F.3d at 207, and the Circuits are split over whether to employ a "but for" or proximate causation standard.  See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 714-16 (1st Cir. 1996) (outlining standards applied

through the circuits).  In Tatro v. Manor Care, Inc., 416 Mass

763, 770 (1994), however, the Supreme Judicial Court held that

the "but for" test properly comports with the Massachusetts long-

arm statute and the First Circuit agreed with this application in

the tort context where a foreign corporation directly targets

residents to further a business relationship.  See Nowak, 94 F.3d

at 715.

    Employing the liberal "but for" approach of Tatro, Weinberg

and Ward argue that the Serengeti Defendants' use of travel

agents and booking agents to obtain most of their customers

satisfies the relatedness test.  Pls.' Mem. 21.  Indeed, it

appears that solicitation through agents does prove successful

for the Serengeti Defendants, see Aff. Nigel Pogmore ¶¶ 5-7, and

the possibility that one or more of its customers could be

injured during one its many balloon flights certainly is

foreseeable.  It is thus arguable that Weinberg and Ward's claim

was "made possible by, [and] lies in the wake of [the Serengeti

Defendants'] Massachusetts contact" through Overseas Adventure

and that, but for such solicitation, Marron's death and

Weinberg's injuries would not have occurred.  Nowak v. Tak How,

Ltd., 899 F. Supp. 25, 31 (D. Mass. 1995), aff'd, 94 F.3d 708

(1st Cir. 1996) (internal quotation marks and citations omitted).

    This relaxed application of the relatedness test, however,

has been applied only when a foreign defendant directly targets

Massachusetts residents in an ongoing effort to further a
business relationship.  See Nowak, 94 F.3d at 715 (holding that
claim arises from foreign hotel's direct solicitation of
Massachusetts company); Tatro, 416 Mass. at 769-70 (holding that
claim arises from broad range of solicitations and other
activities in Massachusetts).  Here, Weinberg and Ward do not
provide the Court with evidence that the Serengeti Defendants
directly targeted residents of Massachusetts through the use of
travel agents.  Applying the proximate cause standard, the Court
holds that Weinberg and Marron's advanced reservation agreement
with Overseas Adventure "would hardly be an important, or perhaps
even material, element of proof in their [negligence] case."
Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986).

### (2)  Purposeful Availment

Regardless of this Court's application of the "arising
under" prong, Weinberg and Ward's true difficulty in proving
personal jurisdiction lies in whether the Serengeti Defendants'
contacts with Massachusetts - through Overseas Adventure -
constitute purposeful availment.

The purposeful availment requirement ensures that
jurisdiction is not premised on "random, isolated, or fortuitous"
contacts with the forum state.  Sawtelle, 70 F.3d at 1391
(citation omitted).  There are two "cornerstones" of purposeful
availment: foreseeability and voluntariness.  Fern v. Immergut,

55 Mass. App. Ct. 577, 587 (2002) (citing <u>Sawtelle</u>, 70 F.3d at
1391).  The focus of this analysis is on whether a defendant has
"engaged in any purposeful activity related to the forum that
would make the exercise of jurisdiction fair, just, or
reasonable."  <u>Rush</u> v. <u>Savchuck</u>, 444 U.S. 320, 329 (1980).

Weinberg and Ward argue, relying on <u>Nowak</u>, that the
Serengeti Defendants' relationships with travel agents and ticket
brokers are designed to bring Americans into Tanzania, including
Massachusetts residents.  Pls.' Mem. 22.  Weinberg and Ward cite
<u>Nowak</u>, 899 F. Supp. at 28-32, <u>Tatro</u>, 416 Mass. 763, and <u>O'Keefe</u>
v. <u>Amin</u>, No. 95-12595-WGY, 1996 WL 463685, at *3 (D. Mass. Aug.
2, 1996), where courts held that jurisdiction existed over
foreign defendants in the travel business when the defendants
directly solicited Massachusetts business.  Pls.' Mem. 16.
Unlike those three cases, however, here Weinberg and Ward have
not provided any evidence to show that the Serengeti Defendants
directly targeted Massachusetts residents.  It appears that any
contacts made were "random, isolated, or fortuitous."  The
evidence shows only that Kibo contacted Tourism Services, and
does not show purposeful and directed contact by Tourism Services
to Kibo and Overseas Adventure.  This is a fatal flaw, for
without further evidence, the Serengeti Defendants did not
purposefully seek out business in Massachusetts.

Overseas Adventure's official Handbook did provide a

31

specific package involving the Serengeti Defendants' balloon excursions.  See Pls.' Mem. 16; Traveler's Handbook 48.  Weinberg and Marron's tickets were booked through Kibo by Overseas Adventure, followed by Kibo, which then contacted Tourism Services to request a booking and confirmation.  See Defs.' Mem. 8; Decl. Anthony Pascoe Supp. Mot. Dismiss Tourism and Pub. Relations Servs. Ltd. Trading as Serengeti Balloon Safaris ("Aff. Anthony Pascoe") ¶¶ 18-19, ECF No. 23.  Kibo's involvement in the booking breaks the agency connection needed to prove that the Serengeti Defendants purposefully sought out Overseas Adventure to sell its tickets, thereby availing itself of the benefits of the Massachusetts connection.  See id. Ex. 3-5, ECF Nos. 23-3 - 23-5 (including correspondence between Kibo and Serengeti Defendants without any indication of Overseas Adventure's involvement).

While it certainly seems foreseeable that Kibo would seek out additional travel agents to sell the Serengeti Defendants' tickets, mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  Therefore, without additional evidence of the Serengeti Defendants' purposeful contact with Massachusetts, the contacts with Overseas Adventure

appear to be unilateral and isolated.

### (3)  Reasonableness

The Court's jurisdictional inquiry is not a mere "mechanical exercise," Ticketmaster-New York, Inc., 26 F.3d at 209, and the "concepts of reasonableness must illuminate the minimum contacts analysis." Sawtelle, 70 F.3d at 1394; see World-Wide Volkswagen Corp., 444 U.S. at 292.  The Court thus evaluates the reasonableness of exercising its jurisdiction under the "Gestalt factors."  The factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

United Elec., Radio & Mach. Workers, 960 F.2d at 1088 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

With respect to the first factor - the defendant's burden of appearing - the Serengeti Defendants validly argue that appearing in Massachusetts would be a significant burden on them because their employees reside and work in Tanzania and the evidence related to the accident is located in Tanzania.  Defs.' Mem. 15. Although the need to defend an action in a foreign jurisdiction "is almost always inconvenient and/or costly . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64

(1st Cir. 1994).  In the modern era, however, improved telecommunications and discount air travel has lessened the burden of appearing in foreign jurisdictions on all parties.  <u>See</u> <u>Nowak</u>, 899 F. Supp. at 33-34 (noting the number of miles from Hong Kong to Boston is not by itself sufficiently onerous to violate due process).  Still, this factor weighs in favor of the Serengeti Defendants because it would be a special burden to produce witnesses and evidence from Tanzania.

The second factor - the forum state's interest in adjudicating the dispute - also weighs in favor of the Serengeti Defendants.  Both Weinberg and Ward are residents of Florida and the alleged tortious injuries and death occurred in Africa.  <u>See</u> <u>Donatelli</u>, 893 F.2d at 462 ("[A]part from a generalized concern for the rights of its own domiciliaries, the [forum] state has no real interest in adjudicating the controversy . . . .").  Nevertheless, this Court still has a strong interest in protecting the rights of American citizens from negligence that occurs outside our borders.  The interest is similar to that of federal courts in adjudicating international human rights abuses, even when the injury occurs outside the United States.  <u>See</u> <u>Bauman</u> v. <u>DaimlerChrysler Corp.</u>, 644 F.3d 909, 927 (9th Cir. 2011) (expressing strong interest in adjudicating international human rights abuses even when injuries occur abroad).

The third and fourth factors - the interest of the plaintiff

34

and the judicial system in convenient and effective relief -
favor the Court's exercise of jurisdiction.  The First Circuit
repeatedly has observed that "a plaintiff's choice of forum must
be accorded a degree of deference with respect to the issue of
its own convenience."  Sawtelle, 70 F.3d at 1395.  Here, Weinberg
and Ward's convenience is significantly enhanced by litigating in
Massachusetts, as opposed to bringing the suit in Tanzania.
Further, their success in litigating in Tanzania is uncertain and
"it is unlikely that the parties will be able to resolve the
dispute without judicial intervention in some forum" if the
matter is dismissed here, and "[t]he most efficient path for the
judicial system . . . is to move forward with the lawsuit in the
present forum."  Hasbro, Inc. v. Clue Computing, Inc., 994 F.
Supp. 34, 46 (D. Mass. 1997) (Woodlock, J.).

     The final factor concerns the interests of affected states
in promoting substantive social policies.  As mentioned above, it
is arguable that United States federal courts have a strong
interest in protecting the rights of United States citizens from
negligence that occurs abroad.  On the other hand, Tanzania
likely has an interest in protecting its visitors and seeking to
protect and promote its businesses, including its tourism related
businesses.  As this Court decided in Nowak, this factor is
likely neutral in the present analysis.  899 F. Supp. at 34.

     Although this Court concludes that it lacks jurisdiction

over the Serengeti Defendants, it does so regretfully.  The Court retains jurisdiction over Overseas Adventure and Kibo.

###   C.    Analysis of Amended Claims

Having established its jurisdiction, the Court next must examine the individual claims in the amended complaint for futility.  A claim added by amendment would be futile when the factual allegations (and reasonable inferences) are insufficient to meet each element necessary for recovery.  McNeill Eng'g Co., Inc., 59 F. Supp. 2d at 201.  In reviewing futility, the Court applies the standard for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Adorno, 443 F.3d at 126.

####     1.    Count I: The Montreal Convention Does Not Apply

As discussed above, the Montreal Convention does not apply to the facts of this case.  Supra Section II.B.1.a.  Count I against Overseas Adventure is therefore futile, and the Court must DISMISS it.

####     2.    Count II: Negligence of Overseas Adventure

To adequately state a claim for negligence, a plaintiff must plausibly allege "that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 447 Mass. 141, 146 (2006).  Here, Weinberg and Ward allege that Overseas Adventures had a duty to investigate the safety record of the

36

Serengeti Defendants, breached that duty, and that Weinberg and
Marron were injured as a result of the breach.  Overseas
Adventure argues in opposition that travel agents have no duty to
clients for the negligence or dangerous conditions of third
parties.  Def. Grand Circle LLC's Mem. Law Supp. Opp'n Pls.' Mot.
Leave File Second Am. Compl. ("Overseas Adventures Opp'n Leave
File Second Am. Compl.") 5, ECF No. 36.

Whether a party has a duty of care is a question of law.
Jupin, 447 Mass. at 143 (quoting Andrade v. Baptiste, 411 Mass.
560, 565 (1992)).  "No better general statement can be made than
that the courts will find a duty where, in general, reasonable
persons would recognize it and agree that it exists."  Id. at 146
(quoting Luoni v. Berube, 431 Mass. 729, 735, (2000) (quoting
W.L. Prosser & W.P. Keeton, Torts § 53, at 358–359 (5th ed.
1984))). Courts determine duties "by reference to existing social
values and customs and appropriate social policy."  Id. at 143
(quoting Cremins v. Clancy, 415 Mass. 289, 292 (1993)).

As a general rule, travel agents are not "liable for the
negligence or dangerous conditions of third-party hotel or travel
operators."  Hofer v. Gap, Inc., 516 F. Supp. 2d 161, 176 (D.
Mass. 2007) (Saylor, J.) (collecting cases). The Massachusetts
Appeals Court recently elaborated on the rule, concluding that
travel agents and tour operators "[g]enerally . . . cannot be
held liable for the negligent acts of third parties that occur on

a premises not under the control or ownership of the tour operator." Deacy v. Studentcity.com, LLC, 75 Mass. App. Ct. 1110, at *2 (2009) (agreeing with the unpublished decision of the trial court).  The court went on to hold that "[t]our operators owe no 'heightened duty of care' similar to that of an innkeeper," and declined to impose liability on travel agents or tour operators in circumstances that would apply to innkeepers. Id. (citations omitted).

Nonetheless, "[a]s a general principle of tort law, every actor has a duty to exercise reasonable care to avoid physical harm to others." Jupin, 447 Mass. at 147 (quoting Remy v. McDonald, 440 Mass. 675, 677 (2010)).  The holding of Deacy in theory leaves open an avenue for a negligence claim based on the travel agent's own negligent act (i.e., negligently selecting a dangerous contractor), and the Seventh Circuit opinion cited by the court in Deacy accepted this premise.  Deacy, 75 Mass. App. Ct. 1110, at *2 (citing Wilson v. American Trans Air, Inc., 874 F.2d 386, 388-391 (7th Cir. 1989)).  In Wilson v. American Trans Air, Inc., the Seventh Circuit discussed the duties of tour operators at length, concluding that a tour operator "cannot disclaim liability for injuries arising out of its own negligence," Wilson, 874 F.2d at 389.  The Seventh Circuit labeled this theory "negligent selection," and found that the applicable state law "allow[ed] a principal to be held liable for

38

the torts of a hired independent contractor when the consequences of the <u>principal's own negligent failure to select a competent contractor</u> caused the harm upon which the suit is based." <u>Id.</u>; <u>cf.</u> <u>Ross</u> v. <u>Trans. Nat'l Travel</u>, No. 88-1763-Z, 1990 WL 79229, at *2 (D. Mass. June 5, 1990) (Zobel, J.) (rejecting argument that tour operator "had a duty to do more than use due care in selecting a safari operator"). Simply put, you cannot be immunized from your own negligent acts just because you are a travel agent.

It is true that a valid cause of action for negligent selection would require a rather unreasonable set of facts to prevail, but unreasonableness is the touchstone of negligence and at the heart of every allegation of a breach of duty. As usual, "the reasonable person standard is uniquely within the competence of the jury," even when the facts are undisputed. <u>Wilson</u> v. <u>Cohen</u>, 244 F.3d 178, 182 n.2 (1st Cir. 2001) (quoting <u>Noble</u> v. <u>Goodyear Tire & Rubber Co., Inc.</u>, 34 Mass. App. Ct. 397, 402 n.2 (1993)).

Taking all reasonable inferences in favor of Weinberg and Ward, the facts alleged are adequate to state a claim. Weinberg and Ward allege that Overseas Adventure breached their duty because it knew that the Serengeti Defendants had previously had a serious wind related accident, and that the safety precautions taken by the balloon operators were not adequate or reasonable

for an accident in the Serengeti.  E.g., Second Am. Compl. ¶¶ 18, 24, 25.  It is a reasonable inference that not having water supplies or an emergency rescue plan was unwise (or worse) in an aerial adventure over the Serengeti.  See id. ¶¶ 24, 42. Weinberg and Ward further allege that Overseas Adventure's negligence caused their injuries and Weinberg and Marron would not have taken the balloon flight absent Overseas Adventure's representations.  Id. ¶ 18, 26, 31-34.

The Court is not prepared to hold at this stage that these facts are implausible as matter of law, although the issue might be revisited after further discovery at summary judgment. Therefore, Weinberg and Ward have tentatively stated a claim for negligence against Overseas Adventure and the Court declines to conclude the negligence claim is necessarily futile.

### 3.    Count III: Violations of Massachusetts General Laws Chapter 93A

Weinberg and Ward next allege that Overseas Adventure committed unfair and deceptive practices in violation of Massachusetts General Laws chapter 93A ("Chapter 93A").  Second Am. Compl. ¶¶ 45-57.  To support this allegation, Weinberg and Ward point to their claims of negligence, several violations of 940 Mass. Code. Regs. 15.00 et seq., and representations made by Overseas Adventure in its Traveler's Handbook.  Id.

Overseas Adventure correctly contends that negligence alone will not give rise to liability under Chapter 93A.  Overseas

Adventure Mem. Opp'n Leave File Second Am. Compl. 9. A complete
Chapter 93A claim may, however, be based on negligence where
there are also unfair or deceptive acts. Darviris v. Petros, 442
Mass. 274, 278 (2004) (noting that while Chapter 93A is a statute
of broad impact, it requires more than a finding of mere
negligence); Squeri v. McCarrick, 32 Mass. App. Ct. 203, 207
(1992) (leaving the questions of negligence and whether acts were
unfair or deceptive to the jury). Here, Weinberg and Ward
sufficiently allege both negligence, and unfair and deceptive
representations in the form of Overseas Adventure's Traveler's
Handbook as well as verbal representation by Overseas Adventure's
agent. Second Am. Compl. ¶ 15. They also allege a per se
violation of Chapter 93A as provided by Code of Massachusetts
Regulations title 940 chapter 15.00. Second Am. Compl. ¶ 47-49.

The Attorney General promulgated 940 Mass. Code. Regs. 15.00
(the "Regulation") pursuant to Chapter 93A to define and outlaw
"certain unfair and deceptive practices in the sale of travel
services to the public." 940 Mass. Code. Regs. 15.00. The
Regulation prohibits sellers of travel services from engaging in
deceptive or misleading business practices, id. 15.03-04,
including the following requirements:

> No seller of travel services may fail to disclose
> information about a travel service it offers to sell,
> provide, contract for, or arrange, where such failure has
> the capacity or tendency to deceive or mislead a
> consumer, or has the effect of deceiving or misleading a
> consumer in any material respect; nor may a seller of

> travel services fail to disclose to a consumer any fact
> the disclosure of which may have influenced the consumer
> not to enter into a transaction.

940 Mass. Code. Regs. 15.04(1).  A violation of any provision of

the Regulation is an unfair or deceptive practice.  Id. 15.01(1).

Weinberg and Ward claim that they relied on Overseas Adventure's

representations as to the safety of the balloon ride, and that

Overseas Adventure failed to disclose information (i.e., safety

concerns or inadequacies) that might have influenced Weinberg and

Marron not to purchase tickets for the ride.  Second Am. Compl.

¶¶ 47-51.  Taking all reasonable inferences in favor of the

nonmoving party, Weinberg and Ward sufficiently alleged facts to

support their Chapter 93A claim.  See Ruiz v. Bally Total Fitness

Holding Corp, 496 F.3d 1, 5 (1st Cir. 2007).

### 4.   Count IV: Negligence of the Serengeti Defendants

As this Court lacks personal jurisdiction over the Serengeti

Defendants, the claim of negligence against the Serengeti

Defendants must be DISMISSED.  See supra Section II.B.

### 5.   Count V: Negligence of Kibo

The negligence claim against Kibo is subject to the same

analysis as the negligence claim against Overseas Adventure.

Granting that Kibo has a duty of care to travelers for which it

purchases tickets, see supra Section II.C.1, Kibo could also, in

theory, be liable for negligent selection.  Weinberg and Ward

allege that Kibo reserved and booked Serengeti Defendants balloon

flights for Overseas Adventure, and that Kibo failed in its duty
to investigate or warn of safety issues.  Second Am. Compl. ¶¶
63-66.  Unlike the allegations against Overseas Adventure, Kibo
is accused solely of not conducting a careful investigation, and
not notifying Weinberg and Ward of "safety issues it inevitably
would have discovered."  Id. ¶ 64-65.  These allegations are not
sufficient to draw reasonable inferences that Kibo knew of safety
violations, or that a duty of due care required Kibo to inform
Weinberg and Marron of the safety problems.  The complaint does
not allege that Kibo recommended the Serengeti Defendants to
Weinberg and Marron, marketed the balloon flight, or even that
Kibo tour guides were present for the balloon flight.  See e.g.,
id. ¶¶ 3, 24, 34.  Based upon the amended complaint, the Court
holds that Weinberg and Ward failed to state sufficient facts
that Kibo breached their duty or caused harm.  The claim for
negligence against Kibo must be DISMISSED.

### 6.  Count VI: Gross Negligence of Overseas Adventure, Kibo and Serengeti Defendants

In their amended complaint, Weinberg and Ward include a
separate count for "gross negligence and reckless conduct."
Second Am. Compl. ¶¶ 67-73.  Although merely a form of higher
culpability negligence, gross negligence or recklessness may be
filed as an independent claim.  See e.g., Matsuyama v. Birnbaum,
452 Mass. 1, 36 (2008).  "Gross negligence is substantially and
appreciably higher in magnitude than ordinary negligence."

43

Altman v. Aronson, 231 Mass. 588, 591-92 (1919) ("Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure.").  For example, negligent acts that are "long continued, serious, deliberate and persistent" may constitute gross negligence.  Shepard v. Roussel, 341 Mass. 730, 730 (1960).

Although Overseas Adventure does not explicitly argue that Weinberg and Ward fail to state a claim for gross negligence (as opposed to negligence), this Court holds that the facts alleged are insufficient to plead gross negligence.  The complaint does not include allegations that are "appreciably higher in magnitude than ordinary negligence," see Altman, 231 Mass. at 591, nor acts that are deliberate, persistent or continued, see Shepard, 341 Mass. at 730.  The Court DISMISSES Count VI as futile for failure to state a claim.  See U.S. ex rel. Gagne, 565 F.3d at 48.

### 7.   Counts VII and Count VIII: Massachusetts General Law Chapter 229

Massachusetts General Law chapter 229, section 2 ("the Wrongful Death Statute") creates a statutory wrongful death claim with the same elements as negligence.  37A Mass. Practice § 28.2 (3d ed.).  As discussed above, Weinberg and Ward adequately plead a claim for negligence, including that Overseas Adventure's negligence caused Marron's untimely death.  These facts are sufficient to state a claim under the Wrongful Death Statute and

44

demonstrate (taking all inferences in favor of the plaintiffs) that Count VII is not futile as a matter of law against Overseas Adventure.  The Court has already rejected the negligence claims against Kibo and the Serengeti Defendants, and therefore only Overseas Adventure may be liable for wrongful death in this suit. See supra Sections II.B, II.C.4.  The Court DISMISSES Count VII against Kibo and the Serengeti Defendants.

Section 6 of the Wrongful Death Statute provides that damages for statutory wrongful death actions also may be recovered for conscious suffering, to be paid to the estate of the deceased.  Mass. Gen. Laws ch. 229, § 6.  Although Section 6 could increase the damages for plaintiffs like Weinberg and Ward, the provision does not provide an independent cause of action. See id.  Therefore, the Court DISMISSES Count VIII.

### 8.   Count IX: Negligent Misrepresentation

Negligent misrepresentation causing personal injury "is not, at this time, a recognized cause of action in Massachusetts." Gianocostas v. Interfact Group-Mass., Inc., 450 Mass. 715, 727-28 (2008) (describing a claim for negligent misrepresentation as based in personal injury where statements by tour operator to parents of decedent allegedly led to a delay in medical care and death).  Accordingly, this count is futile as well, and must be DISMISSED.

45

## III. CONCLUSION

### A.    Personal Jurisdiction

It seems unfair that the Serengeti defendants can reap the benefits of obtaining American business and not be subject to suit in our country.  It is perhaps unfortunate that recent jurisprudence appears to "turn the clock back to the days before modern long-arm statutes when a [business], to avoid being hailed into court where a user is injured, need only Pilate-like wash its hands of a product by having [agents] market it," Russell J. Weintraub, A Map Out of the Personal Jurisdiction Labyrinth, 28 U.C. Davis L. Rev. 531, 555 (1995), and that, in many circumstances, American consumers "may now have to litigate in distant fora – or abandon their claims altogether," Arthur R. Miller, Inaugural University Professorship Lecture:  Are They Closing the Courthouse Doors? 13 (March 19, 2012) (criticizing the plurality opinion in J. McIntyre Mach. v. Nicastro), but this Court must follow the law as authoritatively declared.  See also Case Note, A Throwback to Less Enlightened Practices: J. McIntyre Machinery, Ltd. v. Nicastro, 160 U. Pa. L. Rev. PENNUmbra 366 (2012), http: www.pennumbra.com/casenotes/5-2012/Vosseler.pdf. For the reasons set forth above, this Court cannot exercise jurisdiction over the defendants, Serengeti Balloon and Tourism Services.  The Serengeti Defendants' motion to dismiss must therefore, and hereby is, GRANTED without prejudice.

**B.    Leave to Amend**

As the amendment policy is a liberal one, the Court must give leave "freely when justice so requires."  Fed. R. Civ. Pro. 15(a); <u>Foman</u>, 371 U.S. at 182.  Still, the Court ought not permit futile claims to move forward.  The Court grants the leave to amend, but dismisses the following counts as futile: Counts I, IV, V, VI, VIII and IX.  <u>See</u> Pls.' Mot. Leave File Second Am. Compl., ECF No. 33.  The remaining claims, for negligence, unfair and deceptive practices, and wrongful death against Overseas Adventure, must proceed to the next stage of litigation, whether that be summary judgment based upon undisputed facts, or a jury trial – the embodiment of "justice" in the American legal system. This memorandum and order demonstrates an obvious but lamentable truth – that where personal jurisdiction is limited, the parties most culpable may escape liability, leaving the burden of recovery on defendants close to home – even when they are undoubtedly less culpable.

  /s/ William G. Young   
WILLIAM G. YOUNG
DISTRICT JUDGE

47